Paul M. SCHREIBMAN, Plaintiff-Appellant,

v.

L. I. COMBS, Jr., and Village Shopping Center, Inc., an Indiana corporation, Defendants-Appellees.

No. 15498.

United States Court of Appeals
Seventh Circuit.

June 30, 1966.

Rehearing Denied July 28, 1966.

---

Richard P. Komyatte, Harold Abrahamson, Owen W. Crumpacker, Crumpacker & Abrahamson, Hammond, Ind., for appellant.

Justin Waitkus, Gary, Ind., for appellee.

Before HASTINGS, Chief Circuit Judge, SCHNACKENBERG, Circuit Judge, and GRUBB, Senior District Judge.

GRUBB, Senior District Judge.

Appellant, Paul M. Schreibman, a real estate broker, brought this action to recover a broker's commission. Previously this court held that the broker was not precluded from recovery by failure to hold an Indiana broker's license at the time of execution of the listing agreement and remanded the case to the district court for determination of liability. Schreibman v. L. I. Combs & Sons, Inc., 337 F.2d 410 (7th Cir. 1964). There-

after, the case was tried to the court. On the court's findings of fact and the conclusion of law that the broker had failed to sustain his burden of proof of establishing a breach of the brokerage contract, judgment was entered for the defendants. This appeal followed.

The basic findings of fact are not contested. From these it appears that Schreibman submitted a listing agreement which was signed by L. I. Combs on behalf of the defendants pursuant to which Schreibman was given the exclusive right to sell the Village Shopping Center, Inc. for approximately $5,000,000. The sellers agreed to accept the sum of $465,000 in cash and a purchase money mortgage, the terms of which had to be "agreeable to both ourselves and the buyers, for the balance." The listing contract further provided that with the sellers' consent "the property may be sold for a lesser sum and on other terms."

On the day the listing agreement was signed, July 8, 1959, Schreibman produced a prospective buyer, Mr. Elmer Babin, who submitted an offer to buy the property by purchasing all outstanding stock of the Village Shopping Center, Inc., subject to the unpaid balance of two outstanding mortgages, in the total amount of $3,650,000, which was to be credited against the purchase price. A tentative agreement as to the price and some of the other terms of the purchase was reached by the parties subject, however, to examination and approval of the sellers' attorney, Mr. Henry Sackett.

Babin prepared the contract of purchase and a stock pledge agreement designated as a "Collateral Security Agreement." Sackett, after examining the documents on August 4, 1959, raised the objection that Babin had not been made personally liable as to the unpaid balance of the purchase price.

Due to various objections, negotiations were stopped in August of 1959, but communications among the parties continued during the ensuing months. In March, 1960, Babin submitted new proposals to Schriebman who forwarded

them to defendants. Combs and Babin thereafter agreed as to price, terms, and interest. Sackett went over the documents embodying these agreements which were prepared by Babin. He found that some changes had been made in the basic agreements in line with his suggestions of the previous August, but noted that Babin had not provided for any personal liability for the unpaid balance of the purchase price. An appointment was then made by Combs and Babin to meet with Sackett in Gary, Indiana on April 12, 1960.

When Babin arrived in Gary, Combs informed him that the deal was off because he had been told by a financial adviser that he was making a very foolish deal, but suggested that they, nevertheless, meet with Sackett that day. He would see his adviser again that evening and then make his final decision. Combs, Babin and Sackett then met and went over the proposals drafted and submitted by Babin. Although Babin made suggestions for other means of securing the unpaid portion of the purchase price, he did not propose that he would personally guarantee the balance. On the evening of April 12, 1960, Combs notified Babin that the deal was off and discontinued negotiations.

Schreibman contends that the facts as found by the district court establish his right to a commission in that they show that he produced a buyer, ready, willing, and able to purchase the property and that the consummation of the sale was prevented by the sellers' refusal to negotiate the terms of the sale in good faith.

In this case the sellers reserved to themselves the right to approve the terms of a purchase money mortgage covering the unpaid balance of the purchase price,

an amount of approximately $800,000. On the advice of their attorney, the sellers requested that the indebtedness secured by the purchase money mortgage, which would be inferior to other outstanding mortgages on the property, also have the personal guarantee of the buyer.

This material condition of the terms of the purchase money mortgage was communicated to the prospective buyer in August of 1959. The buyer did not then agree to meet this condition; nor did he offer such a personal guarantee in the renewed proposals of March and April 1960. Combs' statement on April 12, 1960, that the deal was off because he had been told that it was foolish does not negate the fact that the negotiations were terminated because the buyer, after some eight months of negotiations and communications and two proposals of terms drafted by him, had not met conditions of the deal which, under the listing agreement, were subject to the approval of the sellers. There was no refusal on the part of the sellers to negotiate the terms of the sale in good faith. Compare, for example, Henry G. Meigs, Inc. v. Empire Petroleum Company, 273 F.2d 424 (7th Cir. 1960), where the party found guilty of failure to negotiate in good faith had insisted on inclusion of illegal terms.

Under the circumstances of this case, the broker had not produced a buyer, ready, willing, and able to purchase the property according to the terms as set forth in the listing agreement. Appellant is not entitled to recovery of his commission. Huber v. Ryan, 347 F.2d 712 (7th Cir. 1965); Drake v. Biddinger, 30 Ind.App. 357, 66 N.E. 56 (1903).

Judgment affirmed.